ROSS v. WESTERN UNION TEL. CO.

(Circuit Court of Appeals, Fifth Circuit. June 7, 1897.)

No. 577.

1. TELEGRAPHS—DELAY IN DELIVERING MESSAGE—PROXIMATE CAUSE.
   The delay of a telegraph company in delivering a message warning the person to whom it is addressed that armed men are pursuing him is not the proximate cause of his death at the hands of his pursuers.

2. SAME.
   Where there is only a bare possibility that the prompt delivery of a message warning the person to whom it was addressed that he was pursued by armed men would have enabled him to escape, it seems that the company is not, by reason of its delay in delivering the message, responsible for his death at the hands of his pursuers.

3. SAME.
   Where a message addressed to one who was not a resident of the town, and which was directed to no particular street or locality in the town, warned him that he was pursued by armed men, and in a few minutes after he reached the town, and while he was proceeding to the telegraph office, he was overtaken and killed by his pursuers, the company was not negligent in not delivering the message, as it was not charged with the duty of sending out messengers to watch for his arrival.

Error to the Circuit Court of the United States for the Northern Division of the Northern District of Alabama.

R. W. Walker, for plaintiff in error.

Milton Humes, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge. Suit was brought by the plaintiff in error in a state court in Alabama against the Western Union Telegraph Company to recover damages for the death of her husband, Robert C. Ross, which she alleged was caused by the negligence of the agent of the defendant corporation in failing to deliver a telegram to Robert C. Ross. It seems that Ross had incurred the enmity of four brothers named Skelton, and that to avoid them he left Scottsboro, Ala., early in the morning of February 4, 1894, to go to Stevenson, Ala. Before leaving he requested a relative, E. H. Ross, to inform him by telegraph at Stevenson of anything important for him to know. Between 10:17 and 10:20 o'clock that morning E. H. Ross went to the telegraph office at Scottsboro, and sent the following message, paying 25 cents for the transmission of the same:

"To R. C. Ross, Stevenson, Ala.: Four men on horseback with guns following. Look out.
      "[Signed]                                              E. H. Ross."

While E. H. Ross was writing this telegram, or just after he had written it, Judge John B. Tally came into the office, and wrote a telegram. The message sent by Tally was as follows:

"To Wm. Huddleston, Stevenson, Ala.: Don't let party warned get away. Say nothing.
      "[Signed]                                              John B. Tally."

When Tally handed his message to Whitner, the operator at Scottsboro, he remarked to him, "Here is one that bears on that one." The two messages seem to have been sent at the same time, or as near the same time as they could be transmitted,—Ross' message at 10:25 and Tally's message at 10:28. When Huddleston, the operator at Stevenson, received the message, he wired back to Whitner to know .what the message to him (Huddleston) meant, and Whitner replied that he did not know. It appears from the testimony in the case that Huddleston was mayor of the town of Stevenson, Ala., as well as telegraph operator, and he seems to have been uncertain as to what the trouble was that caused the sending of the two telegrams. He appears to have been under the impression that he was expected to have Ross arrested, and he took steps to that end by sending for the town marshal. When he returned to the telegraph office, having gone out, as he says, for the purpose of communicating with the officer, Ross drove up to the depot, where the telegraph office was, in a hack, and stepped out. There is some doubt in the evidence as to the exact time that Ross stepped out of the hack, but almost immediately thereafter the four Skeltons, who had been pursuing Ross on horseback, and had dismounted, and left their horses about a half mile behind, opened fire on Ross from different directions, with guns and pistols, and killed him. A number of shots were fired. The claim of Mrs. Ross, as administratrix, is that, if the agents of the telegraph company had used greater diligence in delivering the telegram from E. H. Ross to Robert C. Ross, he would have had time to escape, and his death would have been averted. The case was tried twice in the circuit court. On the first trial the court submitted the matter to the jury, which returned a verdict in favor of the plaintiff, and this the court subsequently set aside. On the second trial the court gave the jury peremptory instructions to return a verdict for the defendant. This last action of the court is the error assigned here.

By the statutes of Alabama (Code Ala. 1886, § 2589) "a personal representative may maintain an action, and recover such damages as the jury may assess, for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death." Suit is brought under this statute. Is there any legal liability, under the circumstances named, on the part of the telegraph company, for Ross' death? Assuming that there was negligence on the part of the company in the matter of the nondelivery of the message, was that the cause of the death of Ross in such way as to give his legal representative a cause of action? If another and independent force intervened to bring about the death of Ross, it will be the responsible cause, even conceding the failure of the telegraph company to deliver him the message from E. H. Ross in time for it to serve as a warning. The new and independent force would be, in law, the proximate cause; and, if the company's neglect could be said to be a cause at all, it would be remote and ineffective. This is not the case of one cause setting another cause in motion, and thereby the original cause, by an unbrok-

en sequence, producing a result; but it is the situation recognized in all the authorities, where an entirely new and independent cause intervenes to bring about a result.    Continuing to assume the strongest case against the company, what it did would not itself have killed Ross, nor would anything it set in motion.  The company did not start the Skeltons in pursuit of Ross.    The Skeltons, for reasons of their own, were acting on entirely independent lines, without any kind of connection with the telegraph company.    Much authority might be cited on this line, but so unusual are the facts of this case that it must be controlled by recognized principles, rather than by any direct authority on anything like similar facts.    The closest case to the one now under consideration to which we have been cited is the case of Reid v. Railroad Co. (Ind. App.) 35 N. E. 703.    The following extract from that case will show its similarity to this on the facts, and the view taken of the question by the court:

"A passenger train may be late, according to its schedule time, in starting from a given station. The delay may be attributable to the negligence of the company's servants. By reason of the delay in starting, a passenger on the train is injured by the accidental discharge of a gun in the hands of a bystander. This injury would not have occurred but for the lateness of the train in starting. The delay in starting the train was negligence, but can it be said that the railroad company must, under the circumstances, answer in damages for the injury? If the company is not liable in the case supposed, it must be for the reason that the negligent delay in starting the train was not the proximate cause of the injury. It is not enough that such injury be one of the numerous links in the chain of consequences that may flow from the wrongful act. The result must be a natural one, and one that might have been reasonably anticipated. In the supposed case there is not only an intervening agency, proximate in point of time, but it is such an agency as was sufficient to break the causal connection between the original act of misfeasance and the injury."

But the facts do not show a case against the telegraph company, even if the law were different.    In the first place, considering the message from Judge Tally to Huddleston in connection with the Ross message, we think that Huddleston was justified in assuming that the men following Ross were pursuing him for the purpose of arrest, and that he (Huddleston) was expected to aid in holding him (Ross) in Stevenson until the arresting party should overtake him.    He was the mayor of Stevenson, and Tally was a judge at Scottsboro,—both peace officers.    Therefore a slight delay on the part of Huddleston would seem to be justified as a reasonable precaution under all the circumstances.    Besides this, it was only the briefest time between the very earliest moment at which the Ross telegram could have been delivered to Ross, and the shooting.    There is evidence to show that the telegrams were being placed in the envelopes and directed at the time the firing commenced.    But, even if the company is held to so stringent a rule as that contended for by the plaintiff in error, and Huddleston should have rushed out to meet Ross without waiting to have the telegrams placed in envelopes and directed in the usual manner, the delay then was hardly sufficient to amount to actionable negligence.    But, if Ross had received the telegram, would it have prevented his death?    It appears from all the facts in the case that the Skelton brothers were close on his track, and, even if Huddleston had

exercised the most extraordinary diligence, and had gone to meet him with the telegram, it is barely possible, but hardly probable, that Ross would have escaped his pursuers. We have discussed these questions in deference to counsel, who earnestly pressed them orally and by brief, but it is not necessary to rest our decision thereon, for under the undisputed facts in the case the telegraph company was not guilty of negligence in not delivering the message of warning in question. Robert C. Ross, the person to whom the message was addressed, was not a resident of the town of Stevenson, nor was he in fact in the town of Stevenson at the time the message was received at the Stevenson office. As the message was directed to no particular street or locality within the delivery limits of the town, it was the duty of the telegraph company to deliver a written copy to Ross promptly on his calling at the telegraph office, and, failing Ross' early call at the office, to deliver such written copy to him by messenger within a reasonable time after the agents of the company should be informed that Ross was to be found at some locality in the town of Stevenson. Ross arrived in the town of Stevenson soon after the message reached the Stevenson office, and was evidently proceeding directly to that office when he was waylaid, shot, and killed without there intervening sufficient time in which the telegraph company could have delivered a copy of the message to him, even if the company was charged with notice of his arrival in town as soon as he came in sight of the telegraph office. Conceding that the message sufficiently notified the company of the importance of speedy delivery, still the company was not charged with the duty of sending out messengers with copies of the message to watch for the arrival of Ross; and, unless charged with such duty, it is clear it was guilty of no negligence. On this ground alone the trial judge was warranted in directing a verdict for the telegraph company, and on this ground the judgment of the circuit court must be affirmed.